Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | |
|---|---|
| *(Briefly Describe the property to be searched or identify the person by name and address* | Case No.   21-185 MB |
| An LG cellular telephone, black in color, with a Micro SIM card and no visible serial or model number received from United States Probation Office, and currently at the Federal Bureau of Investigation, Phoenix. | |

## ELECTRIC ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona    .
*(identify the person or describe the property to be searched and give its location):*

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     July 23, 2021     .
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)   ☐ for 30 days (*not to exceed 30*)
☐ until, the facts justifying, the later specific date of     .

Date and time issued:   July 9, 2021 @ NOON

Judge's signature

City and State:  Phoenix, Arizona

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date:_____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

## TO BE SEARCHED

**PROPERTY:**

FRANK MARSHALL THOMAS' smartphone, currently in the custody of the FBI, 21711 North 7th Street, Phoenix, Arizona, 85024 described as a LG Cricket cellular telephone, black in color, with a micro SIM card and no visible serial number or model number.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.     Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found in the phone including on the micro SIM card.

2.     Any and all data pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using the SUBJECT PHONE, including whether it connected to any other computers.   This also includes:

    a.     Any and all records, including contact information, lists of names, or records of pertaining to or connected with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    b.     Any and all records, including contact information, names, addresses of minors visually depicted in child pornography and child erotica;

    c.     Any and all records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in the cellular phone.

3.     Evidence of the attachment of other storage devices, computers, or similar containers for electronic evidence;

    a.     Evidence of the times the cellular phone was used;

    b.     Passwords, encryption keys, and other access devices that may be necessary to access the cellular phone.

1

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>An LG cellular telephone, black in color, with a Micro SIM card and no visible serial or model number received from United States Probation Office, and currently at the Federal Bureau of Investigation, Phoenix. | Case No.<br><br>21-185 MB |

## ELECTRONIC SUBMITTED APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Special Agent, Candace M. Rose, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona.

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography, with Prior Qualifying Conviction |

The application is based on these facts:
### As set forth in Attachment C, incorporated herein by reference.

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA *s/Gayle L. Helart* _____

✓ _____ Sworn by Telephone

Date and time issued: July 9, 2021

City and State: Phoenix, Arizona _____

_____
*Applicant's Signature*

Candace M. Rose, Special Agent, FBI
_____
*Applicant's printed name and title*

_____
*Judge's signature*

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

## TO BE SEARCHED

**PROPERTY:**

FRANK MARSHALL THOMAS' smartphone, currently in the custody of the FBI, 21711 North 7th Street, Phoenix, Arizona, 85024 described as a LG Cricket cellular telephone, black in color, with a micro SIM card and no visible serial number or model number.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1

## **ATTACHMENT B**

## **ITEMS TO BE SEARCHED AND SEIZED**

1.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found in the phone including on the micro SIM card.

2.      Any and all data pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using the SUBJECT PHONE, including whether it connected to any other computers.   This also includes:

   a.      Any and all records, including contact information, lists of names, or records of pertaining to or connected with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

   b.      Any and all records, including contact information, names, addresses of minors visually depicted in child pornography and child erotica;

   c.      Any and all records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in the cellular phone.

3.     Evidence of the attachment of other storage devices, computers, or similar containers for electronic evidence;

   a.      Evidence of the times the cellular phone was used;

   b.      Passwords, encryption keys, and other access devices that may be necessary to access the cellular phone.

1

**ELECTRONICALLY-SUBMITTED AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Candace M. Rose, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

## INTRODUCTION

The facts of this case, as more fully detailed herein, are on July 6, 2021, United States Probation Officer Fausto Jimenez, District of Arizona, contacted the FBI requesting assistance with the forensic review of a digital device owned by FRANK MARSHALL THOMAS.   THOMAS was convicted of one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(4)(B) and (b)(2) and 2253 on June 23, 2006, in Case No. CR-05-01411-001-TUC-FRZ(GEE).   Part of THOMAS' judgment included lifetime supervised release, and THOMAS is currently under Officer Jimenez's supervision. Officer Jimenez contacted THOMAS at his residence on July 2, 2021 for a routine visit. During this contact, Officer Jimenez observed a cellphone on THOMAS' bed and THOMAS provided consent to search the phone.   While looking in the photo gallery on the phone, Officer Jimenez observed an image of suspected child pornography and seized the phone.   I am requesting that the Court issue a warrant to search the digital device, a LG cellular telephone, black in color, with a Micro SIM card and no visible serial or model number ("SUBJECT PHONE"), received from United States Probation Office, which is currently in the custody of the FBI, to locate child pornography and conclusively identify the individual accessing/receiving/distributing/possessing child pornography.

## PRELIMINARY BACKGROUND INFORMATION

1.    I am a Special Agent with the FBI assigned to the Phoenix Division.   I have been so employed for seventeen years and I am specifically assigned to conduct investigations pursuant to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where computers and the Internet are used in the sexual exploitation of children.   I am responsible for conducting federal and international investigations relating to crimes

1

involving the sexual exploitation of children.   I have received basic and on-the-job training in the investigation of cases involving the sexual exploitation of children.   The statements contained in this Affidavit are based on my experience and background as a Special Agent and on information provided by other law enforcement agents.

2.    The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. §§ 2252(a)(2) which makes it a crime to receive and distribute child pornography and violations of 18 U.S.C. §§ 2252(a)(4)(B), which makes it a crime to possess, or knowingly access with intent to view, child pornography.

3.    Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252 is located on the cellphone (SUBJECT PHONE) belonging to FRANK MARSHALL THOMAS, more particularly described in Attachment A, which is in the custody of the FBI.

## DEFINITIONS

4.    The following non-exhaustive list of definitions applies to this Affidavit and Attachments A and B (collectively referred to as "warrant"):

a.    "Child Pornography" is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

b.    "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not, in and of themselves, obscene or illegal. In contrast to "child pornography," this material does not necessarily depict minors in sexually explicit poses or positions.   Some of the more common types of child erotica

2

include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries.  See Kenneth V. Lanning, Child Molesters: A Behavioral Analysis (2001) at 65. Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  See United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); United States v. Riccardi, 258 F.Supp.2d 1212 (D. Kan., 2003) (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

c.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

d.  "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

e. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

f. "Computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  See 18 U.S.C. § 1030(e)(1).    Smartphones are computers.

g.  "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including   central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video

display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

h. "Computer software" is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic or other digital form. It commonly includes programs to run operating systems, applications and utilities.

i. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k. "Internet Service Providers" (ISPs) are commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment. ISPs can offer various means to access the Internet, including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume

4

of data, called bandwidth that the connection supports.   Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account.   By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

l. "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).   These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers and other information, which may be stored both in computer data format and in written or printed record format.   ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use.   This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m. "Internet Protocol address" (IP address) refers to a unique number used by a computer to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

n. The terms "records," "documents" and "materials" include all information recorded in any form, visual or aural, and by any means, whether in hand-made form (including writings, drawings, painting), photographic form (including microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including phonograph records, printing, typing) or electrical, electronic or magnetic form (including tape recordings, cassettes, compact discs, electronic or magnetic storage

devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o. "Digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including the following: central processing units; laptop or notebook computers; PDAs; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

p. "Image" or "copy" refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device. "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

q. "Hash value" refers to a mathematical algorithm generated against data to produce a numeric value that is representative of that data. A hash value may be run on media to find the precise data from which the value was generated. Hash values cannot be used to find other data.

r. "Steganography" refers to the art and science of communicating in a way that hides the existence of the communication. It is used to hide a file inside another. For example, a child pornography image can be hidden inside another graphic image file, audio file or other file format.

s. "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters with each level delimited by a period. Each level, read backwards - from right to left- further identifies parts of an organization. Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization. For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

u. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

x. "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the

unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY
## AND ONLINE CHILD EXPLOITATION

5.    Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.   Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.   Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras.

c.   Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

d.   The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography. As explained further below, the storage capacity of electronic media used in home computers has increased tremendously within the last several years. These drives can store extreme amounts of visual images at very high resolution.

e.   The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining,

viewing and trading child pornography or for communicating with others to do so or to entice children.

f.  Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.   And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g.  As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media used for these purposes.   Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).   In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.   Such information is often maintained for very long periods of time until overwritten by other data.

h.  The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge.   Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the

9

computer media.   As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it.   A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

i.   Data that exists on a computer is particularly resilient to deletion.   Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard drive can be stored for years at little to no cost.   Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools.   When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear, rather, the data remains on the hard drive until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.   Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.   The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed and more on a particular user's operating system, storage capacity, and computer habits.

**BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATIONS**

6.   Based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know

10

that segregating information before commencement of the review of digital evidence by the examining agent is inconsistent with the evidence assessment process in child pornography and online child exploitation investigations.   This is true in part because the items to be searched will not only contain child pornography but also will contain the identity of the user/possessor of the child pornography as well as evidence as to the programs and software used to obtain the child pornography, which may be located throughout the areas to be searched.

a.      As further described in Attachment B, this warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how the SUBJECT PHONE was used, the purpose of its use, and who used it.   Additionally, the warrant seeks information about the possible location of other evidence.

b.      As described above and in Attachment B, this application seeks permission to search and seize certain records that might be found in the SUBJECT PHONE, in whatever form they are found.

c.      Although some of the records called for by this affidavit might be found in the form of user-generated files, the SUBJECT PHONE can contain other forms of electronic evidence that are not user-generated.   In particular, the SUBJECT PHONE may contain records of how the SUBJECT PHONE was used, the purpose, and who has used the phone or generated the records, as described further in the attachments.   For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know the following:

i.   Data on the SUBJECT PHONE not currently associated with any file can provide evidence of a file or data that was once on the phone but which has since been deleted, edited, or a portion deleted or edited.

ii.   Traces of information on the SUBJECT PHONE that may show what tasks and processes the SUBJECT PHONE recently did.

iii.    Web browsers, e-mail programs and chat programs store configuration information on the SUBJECT PHONE that can reveal information such as online nicknames and passwords.

iv.    Operating systems can record additional information, such as the SUBJECT PHONE being attached to other computers and the times the computer was in use.

v.  The SUBJECT PHONE file systems can record information about the dates files were created and the sequence in which they were created.  This information may be evidence of a crime or indicate the existence and location of evidence in other locations on the hard drive.

d.  Further, in finding evidence of how a computer, including a smartphone like the SUBJECT PHONE, has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on the device or that a particular person (in the case of a multi-user phone) was not a user of the smartphone during the time(s) of the criminal activity.  For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a smartphone has more than one user, files on the smartphone may contain information indicating the dates and times that files were created as well as the sequence in which they were created, whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from usage during times related to the criminal activity.

e.  Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.  Evidence of the absence of particular data on a digital device is not segregable from the digital device.

f.  The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once

12

located, contextual evidence identifying a user and contextual evidence excluding a user. All of these types of evidence may indicate ownership, knowledge and intent.

g.  This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.  Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a smartphone, which is a computer, behaves and how the smartphone was used.  Therefore, contextual information is necessary to understand the evidence described in Attachment A also falls within the scope of the warrant.

## SEARCH METHODOLOGY TO BE EMPLOYED

7.    The search methodology to be employed is as follows:

a.  The SUBJECT PHONE will be forensically examined at the FBI for evidence that is described in Attachment B of this warrant.   It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b. Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the child pornography, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c.  Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

13

8.    Because it is expected that the SUBJECT PHONE may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the case.

a.    Because of the large storage capacity as well as the possibility of hidden data within a smartphone, like the SUBJECT PHONE, it is anticipated that there will be no way to ensure that contraband-free evidence could be returned to the user/possessor of the SUBJECT PHONE without first wiping such evidence clean. Wiping the original evidence clean would mean that the original evidence would be destroyed and thus, would be detrimental to the investigation and prosecution of this case.

b.    Further, because investigators cannot anticipate all potential defenses to the offenses in this affidavit, and as such, cannot anticipate the significance of the evidence that has been lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by law enforcement until the conclusion of legal proceedings or until other order of the court.

c.    If after careful inspection investigators determine that such SUBJECT PHONE do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF CHILD PORNOGRAPHY

9.    Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals involved in the possession and distribution of child pornography.   Those who

14

possess and distribute child pornography:

a.  May receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.  May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.  Often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.   These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.  Often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

e.  May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.   Prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## DETAILS OF THE INVESTIGATION

10.   On July 6, 2021, FBI Special Agent Candace M. Rose, Phoenix Division, was contacted by United States Probation Officer Fausto Jimenez, District of Arizona, requesting assistance to forensically review a cellular telephone obtained by Officer Jimenez from FRANK MARSHALL THOMAS at his residence.   Officer Jimenez provided the following details:

11.   FRANK MARSHALL THOMAS was convicted in the District of Arizona, Case No. CR-05-01411-001-TUC-FRZ(GEE) for one count of Possession of Child Pornography. He was sentenced to a term of 40 months' imprisonment by the Honorable Frank R. Zapata, on June 23, 2006.   Following his sentence of imprisonment, he was released and began his term of supervision on May 15, 2009.   Officer Fausto Jimenez is THOMAS' current supervising officer.

12.   On March 31, 2021, Honorable James A. Soto signed a Waiver and Order for Modifications of Supervised Release Conditions for FRANK MARSHALL THOMAS. On the Waiver and Order, among other terms, three of the following special conditions were ordered:

a.   "You must submit your person, property, house, residence, vehicle, papers, or office to a search conducted by a probation officer.   Failure to submit to a search may be grounds for revocation of release.   You must warn other occupants that the premises may be subject to searches pursuant to this condition. **(Modified)**"

b.   "You must not knowingly possess, view, or otherwise use material depicting sexually explicit conduct involving children, as defined in 18 U.S.C. 2256(2), and material depicting "sexually explicit conduct" involving adults, defined as explicit sexually stimulating depictions of adult sexual conduct that are deemed inappropriate by your

16

probation officer. **(Modified)**"

   c.   "You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search.   You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition.   Failure to submit to a search may be ground for revocation of release.   A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation.   You must consent to and cooperate with the seizure and removal of any hardware and/or data storage media for further analysis by law enforcement or the probation officer with reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct.   Any search will be conducted at a reasonable time and in a reasonable manner. **(Added)**"

13.   On July 2, 2021, Officer Jimenez and another probation officer contacted THOMAS at his residence where he lives alone.   The officers observed THOMAS' cellphone on his bed.   THOMAS is currently allowed to have a cellphone under his release conditions, and the phone is being monitored by an outside agency.

14.   Officer Jimenez requested to search the phone and THOMAS gave verbal consent and provided the PIN code.   While looking through the photo gallery on the phone, Officer Jimenez observed a GIF image that appeared to depict a nude, pre-pubescent minor female performing oral sex on an adult male.   The minor female's genitalia was not visible, but her chest area was.   She lacked breast development and appeared to be approximately ten to twelve years old.

15.   Officer Jimenez stopped looking through the phone and questioned THOMAS about the image.   THOMAS became verbally hostile and physically postured himself.   The officers advised THOMAS that they were seizing the phone and provided him with a property receipt.   THOMAS escalated his aggressive behavior towards the officers, so

they left.

16.     On July 7, 2021, SA Rose met with Supervisor United States Probation Officer Ricardo Castaneda and took possession of the LG Cricket smartphone, which was secured in the U.S. Probation evidence room.   SA Rose then submitted the phone into FBI evidence.

## FORFEITURE

17.   For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 21 U.S.C. § 853(f).

18.   Section 2253 provides, in relevant part:

(a) Property subject to criminal forfeiture -

(1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense, and;

(3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

. Pursuant to these Rules, I request immediate forfeiture of any property, including items of electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child pornography or online child exploitation.

## CONCLUSION

19.   Based on the foregoing, there is probable cause to believe that evidence of violation of Title 18 U.S.C. § 2252, which, among other things, makes it a federal crime for any person to produce, possess, receive, or distribute child pornography, is located on FRANK

18

MARSHALL THOMAS' digital device (SUBJECT PHONE), more fully described in Attachment A, located at the Federal Bureau of Investigation building, 21711 North 7th Street, Phoenix, Arizona, 85024.

Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Candace M. Rose
Special Agent
Federal Bureau of Investigation

Sworn and subscribed telephonically before me this ___9___ day of July, 2021.

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge

19